THE STATE, EX REL. DEPT. OF MENTAL HYGIENE AND
CORRECTION BUREAU OF SUPPORT, *v.* BOOK ET AL.

[Cite as State, ex rel., v. Book, 15 Ohio Misc. 137.]

(No. 45736—Decided July 12, 1968.)

Common Pleas Court of Lake County.

*Mr. Clarence L. Sharpe,* for plaintiff.
*Mr. Lawrence Friedlander,* for defendants.

SIMMONS, J. This case was tried to the court June 17,
1968, a jury having been waived. A decision was reserved
pending submission of briefs and the briefs have now been
received and reviewed.

After a consideration of the pleadings, all the evidence
and the law, the court is of the opinion that defendants are
entitled to judgment.

Accordingly, judgment is granted defendants at plaintiff's costs. Exceptions noted for plaintiff.

IT IS SO ORDERED.

This is an action by the State Department of Mental Hygiene and Correction to recover a money judgment against defendants for the care of Paul Book, a mental incompetent, at a state institution during the period 3/1/64 to 5/31/66. Defendants admit being the parents of the boy and that he was institutionalized with the state in 1959. They deny the claimed indebtedness.

There is no question that defendants are liable relatives under Section 5121.06, Revised Code. The question the case does raise is this: What is the quality of proof required of the state to entitle it to a money judgment against liable relatives?

Here, the state seeks judgment solely on the basis of a "proof of claim" which the court admitted in evidence as a "transcript of charges" under 5121.04, Revised Code. It contends that since this section makes the transcript "prima-facie evidence of the facts therein contained" it is entitled to judgment on the basis of the transcript alone, unless defendants offer evidence to rebut the presumptive accuracy of those facts.

Among the facts stated in the transcript is the number of chargeable days of confinement during the period and the rate charged defendants per day. Defendants offered no evidence to rebut the accuracy of either fact. But they contend the state has the burden of proving not only the fact of the rate charged but its propriety as well; i.e., that it is based upon defendants' ability to pay as required by Section 5121.03, Revised Code:

"The rate of support for a mentally ill or a mentally retarded patient shall be that percentage of the average per capita cost, for the type of institution at which such patient receives care, that the patient or his liable relatives are able to pay."

The testimony of the state's investigator, Jay, clearly shows that the rate chargd defendants was not based on their ability to pay. He testified he did not know what this

ability was during the period. He admitted that the de-
... ... did not made the annual determination of ... ...
... ... required by Section 5121.03, Revised Code:

"The department shall annually determine the ability
to pay of a patient or his liable relatives and the amount
that such person shall pay in accordance with Section
5121.04 of the Revised Code." (This section states how
ability to pay is determined and sets forth a percentage
schedule of rates at various income levels.)

Moreover, Jay testified that the rate charged defend-
ants was 100 percent of the per capita cost and that it was
the practice of the department to charge at this total
rate when liable relatives refused income data.

It is the state's position that this practice is proper
because relatives are given opportunity to produce their
financial records to show a reduced liability under the
schedule; further, that it is incumbent upon the relatives
to prove at trial a lesser ability to pay than is reflected by
the rate charged them.

I cannot agree with either position.

There is nothing ambiguous about the quoted sections
of the code. The state has the clear duty to determine a
liable relative's ability to pay and impose the appropriate
rate based solely upon the determination. As with all plain-
tiffs seeking money judgment based upon charges for ser-
vices, it has the burden of proving the charges are proper.
There is no authority by statute, common law or reason
for the practice they follow here. Resistance or uncooper-
ativeness of relatives does not sanction it. Presumably it
was in contemplation of such uncooperativeness that the
Legislature gave the department the subpoena and deposi-
tion powers under Section 5121.05, which compel disclosure
by relatives of their financial status. It cannot, as it did
here, neglect to use its powers then come into court with
a claim that the burden of proof has somehow shifted to
the relatives.

Counsel for the state argues that its claim is in the na-
ture of an account and, as such, the account exhibit at-
tached to the petition may be received in evidence in sup-

port of all issues, citing *Saperston* v. *Rae-Columbus, Inc.*, 151 Ohio St. 11. But this claim is not the subject of an account. An account presupposes a contract between the parties and a continuing course of business between them. The short-form pleading which the state employed, to which no objection was raised, merely obviates the necessity for pleading the contract. 1 Ohio Jurisprudence 2d, Accounts and Accounting, Section 4, page 168; Section 14, page 175. The *Saperston case* is inapplicable here. It involves an account and upholds the admission in evidence of the account exhibit as a business record. The "proof of claim" in this case was not admitted as a business record, which it is not, but by the dictate of Section 5121.04 (E), Revised Code.

Counsel further cites the case of *State* v. *Webber*, 163 Ohio St. 598, as authority for the view that compliance with the duty to investigate ability to pay is not a condition precedent to a recovery of whatever sum is charged. I am unable to discover this proposition in that opinion. In *Webber* no question was raised as to the amount of the charges. The constitutionality of the statute was challenged. In holding it constitutional the court considered similar foreign state statutes and said: "The obligation to support under the statute is generally, if not always, dependent upon the ability of the obligor to pay."

I now wish to consider the efficacy of the transcript of charges itself. If it carries with it proof sufficient to satisfy the state's burden, then what has been said is immaterial. "It shall be prima facie evidence of the facts therein contained." Of what facts is it evidence? That the rate shown is actually the rate charged, or that the rate shown is the proper rate?

The first meaning is redundant and absurd, yet the second is unacceptable because it contains a legal conclusion and implies other facts not shown. "Proper charge" means "lawful charge" and implies that the relatives' ability to pay has been accurately determined and the rate fixed in accordance with the statutory percentage schedule.

I cannot give the transcript so extensive a weight.

It may be that the Legislature has the power to pre-

scribe that certain facts, when established, shall be presumptive or prima facie evidence upon a legal issue. *State, ex rel. Smith,* v. *Maharry,* 97 Ohio St. 272. But it must clearly say so. It did say so at Section 4511.21, Revised Code:

"It is prima-facie *unlawful* for any person to exceed any of the speed limitations in Sections 4511.01 to 4511.78."

And it said so in Section 117.11, Revised Code:

"A certified copy of any portion of such report [report of examination by the State Bureau of Inspection] is prima facie evidence of the truth of the allegations of the petition."

Had it said here: "The transcript shall be prima facie evidence of the truth of the allegations of the petition," the transcript might then carry the weight the state claims for it. But it does not say this. And so there is a duty imposed upon the state to offer evidence beyond the transcript that the rate charged was based (1) upon an annual determination of the relatives' income, assets and needs of other dependents, Section 5121.04, Revised Code, (1) and (2) upon the appropriate percentage rate within the schedule of Section 5121.04, Revised Code (2).

But assume I am wrong and the transcript should be accepted as evidence of the propriety as well as of the fact of the rate charged. Still it is only prima facie evidence and open to rebuttal that the rate was not properly fixed.

Prima facie proof does not affect the burden of proof which remains with the plaintiff. *Klunk v. Hocking Valley R. W. Company,* 74 Ohio St. 125. And a statute providing that a report is prima facie evidence of the allegations against a defendant does not mean that prima facie *case* is made against him. *Village of Bethesda* v. *Mallonee,* 60 O. O. 107, ref. *State, ex rel. Smith,* v. *Maharry (supra).*

The testimony of the investigator clearly rebutted any presumption of propriety of the rate charged. The rate was fixed against these defendants not on the basis of any determination of their ability to pay during the period, but because they had refused income data.

At this point in the trial, allowing for discussion the

most weight to the transcript, it would be incumbent upon the state to offer evidence upon which the trier of fact could make its own determination of the defendants' ability to pay and the percentage rate to charge according to the schedule. This rate might be the same as the transcript rate or something less. Counsel for the state apparently had some such plan in mind for he filed a precipe for subpoenaes on defendants to compel production of their tax returns. However, he filed it on the morning of trial, then did not request a recess and an order of court requiring defendants to obtain the returns and produce them in court.

Having failed to present any evidence upon which a determination of ability to pay could be made, the state failed to sustain its burden, under either view of the transscript, and cannot obtain judgment in any sum.

I regret this conclusion is necessary because it is probable that at least one of the defendants, Buell Book had the ability to pay charges at some rate. But I cannot speculate on the question, nor should a court be asked to do so when the state could so easily have made speculation unnecessary by a proper investigation utilizing the powers at its disposal.

Defendants have attacked the constitutionality of the statutes involved, claiming a violation of their due process rights. The attack is unwarranted. The burdens which, in my view, the statutes impose upon the state fully preserve these rights and make the statutory method of charging and collecting from liable relatives reasonable.